# CHARLES H. TORSCH AND FREDERICK A. TORSCH *vs.* THOMAS DELL.

*Malicious Prosecution—Probable Cause—Inference of Malice from Absence of Probable Cause—Advice of Counsel.*

In an action for malicious prosecution, the plaintiff must show that the defendant did not have probable cause for the arrest and prosecution of the plaintiff, or in other words, that the defendant did not have such reasonable grounds for suspecting plaintiff to be guilty of the offence charged as would warrant a cautious man in believing him to be guilty.

In this case where plaintiff had been arrested and prosecuted at the instigation of the defendant for stealing certain books relating to the business in which they had been jointly engaged, it was *held* upon the facts that the evidence was legally sufficient to show that the defendant did not have probable cause to suppose that the plaintiff was guilty.

Malice in an action of malicious prosecution may generally be inferred from the absence of probable cause, but such presumption may be rebutted and then the burden of proof is on the defendant to show that he did not act maliciously.

If the evidence be conflicting as to the existence of the facts relied on to rebut the presumption of malice arising from the absence of probable cause, then the question is for the determination of the jury.

When the defendant relies upon the fact that he acted upon the advice of counsel in instituting the prosecution to prove that he did not act maliciously, he must show that he communicated to counsel all the material facts which he knew or could have ascertained with reasonable diligence.

Appeal from a judgment of the Baltimore City Court (PHELPS, J.). At the trial the following prayers were offered:

*Plaintiff's 1st Prayer.*—If the jury shall find from the evidence that the plaintiff was indicted, tried and acquitted in the Criminal Court of Baltimore on the charge set forth in the record of that Court and the docket entries read in evidence; and shall find that the defendants, Charles H. Torsch and Frederick A. Torsch, aided and assisted in procuring the arrest and prosecution of the plaintiff under such circumstances as would not have induced a reasonable and dispassionate man to have undertaken such prosecution from public motives, then there was no probable cause for said prosecution, and the jury may infer in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law, and their verdict may be for the plaintiff.—(*Granted.*)

*Plaintiff's 2d Prayer.*—If the jury shall find a verdict for the plaintiff they are at liberty to take into consideration all the circumstances of the case and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendants' wrongful acts, but may also award exemplary or punitive damages as a punishment to the defendants for such wrongful acts.—(*Conceded.*)

*Plaintiff's 3d Prayer.*—The defendants will be not exonerated from liability in this case by reason of having consulted Mr. Carr, their counsel, or by reason of their having consulted the State's attorney, or any of his deputies, unless the jury find from the evidence that the defendants laid before said counsel or said State's attorney, or any of his deputies, all the material facts within their knowledge, or which by the exercise of reasonable diligence they could have ascertained, and concealed nothing material, and that they acted on the advice of said Carr or said State's attorney or any of his deputies, believing such advice to be sound and without malice.— (*Granted.*)

*Defendants' 3rd Prayer.*—That it is necessary for the plaintiff to prove that the defendants acted maliciously and without probable cause, and if the jury find that the defendants did not act with malice in the premises, and

without probable cause, but that all they did was done under the advice and direction of counsel consulted by the defendants, and from whom the defendants concealed no material facts, and that defendants believed such advice to be sound, then the plaintiff is not entitled to recover.—(*Granted in connection with plaintiff's third prayer.*)

*Defendants' 4th Prayer.*—That if the jury find that one of the defendants, Charles H. Torsch, in company with the defendants' counsel, Alfred J. Carr, did go to the State's attorney's office, and that the said Alfred J. Carr did then and there submit to the deputy State's attorney, in good faith, all the material facts that he knew at the time were capable of proof, and concealed no material facts from him, and that thereupon the said deputy State's attorney caused the case to be submitted to the grand jury attending the Criminal Court of Baltimore city; and that the said Charles H. Torsch, in answer to a summons issued out of the Criminal Court of Baltimore city, commanding him to appear and testify before the said grand jury, did in obedience to said summons appear before said grand jury, and testified in good faith to all the material facts in his possession, and in such testimony concealed no material fact, and thereupon, the said grand jury returned as a true bill the indictment referred to and complained of in the declaration, then the plaintiff is not entitled to recover.—(*Refused.*)

The defendants' fifth, sixth and seventh prayers were similar to the fourth, setting forth the advice of counsel as a defence. The jury returned a verdict for plaintiff for $5,000.

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, PAGE and BOYD, JJ.

*Frank Gosnell* and *Olin Bryan* (with whom was *Alfred J. Carr* on the brief), for the appellants.

*Edgar H. Gans* and *Vernon Cook* (with whom was *B. H. Haman* on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

This suit is an action for malicious prosecution. One of the instructions asked for by the defendants being that there was no evidence sufficient in law to enable the plaintiff to recover, it becomes necessary to examine all the evidence offered at the trial. On the 16th of February, 1897, the appellee was charged with the larceny of certain books, valued at $2,500, belonging to the C. H. Pearson Packing Company, and subsequently was tried on indictment, and acquitted by the Criminal Court of Baltimore City.

It is charged in the *narr.* that the arrest was maliciously procured by the appellants without probable cause. The evidence shows that the books referred to in the indictment were valuable because of their containing what are called "The Quoting Lists" of the Pearson Packing Company. These lists are the names of persons to whom the company quoted prices of raw oysters with the expectation of doing business with them. They had been compiled at much expense and were valuable on that account as well as because of the use made of them in the course of business. Two sets of these Quoting Lists had been originally made by the company; one in 1892 containing about 30,000 names; another in 1895 containing about 18,000 names. In July, 1896, it appears that Mr. Pearson burned the lists of 1895, the reason he gave for so doing being that the books had become dilapidated. Prior to this he had had a copy of the set made in new books, from which were omitted, however, some four thousand names of persons from whom no responses had been received. This copy of the 1895 set, which will be called the third set, was made by the appellee and others at the direction of Mr. Pearson. At the same time, with the consent of Pearson—who was then president of the packing company—the appellee, who was then a director of the company and also its secretary, made a copy of the set of 1895 for his own use which he afterwards used in the prosecution of his own business. There are, therefore, four sets of Quoting Lists referred to in the evidence, viz.,

those of 1892, of 1895, and the two copies of the last, one of which was retained by the packing company, the other by the appellee himself.

It is the original list of 1895 that is referred to in the indictment as having been stolen by the appellee from the packing company. To comprehend the grounds upon which the appellants claim that probable cause existed for procuring the arrest and prosecution of the appellee, it is necessary to state something of the history of the appellee and his connection with the packing company, Mr. Pearson and the appellants. In 1888 the appellee went into the employment as bookkeeper of Mr. C. H. Pearson, who was then engaged in the oyster business. After the concern became a corporation the Torschs held its stock to the amount of $12,000. The appellee remained in its employment—at first as a bookkeeper, and afterwards as its secretary and treasurer. Pearson controlled a majority of the stock, and to secure to himself the majority of the votes in the board, he caused to be elected as directors the appellee and two other persons, to each of whom he had sold a share of the stock. He then had four votes in the board which consisted of seven members. The affairs of the new corporation, however, did not go on with much smoothness. The appellee in his testimony says that in the directors' meetings, " The Torsch brothers were always siding together and Mr. Pearson was always at odds with them." It is not worth while here to enter into the details of these differences, except to say that they seem to have grown out of the frequent applications of the company to the Torschs for financial aid.

In 1894 these differences culminated and the Torschs, in February of that year, filed a bill to compel Pearson to restore the sum of $8,000, which they alleged the latter had misappropriated out of the funds of the company. This suit was fiercely litigated for more than a year. The appellee sympathized with Mr. Pearson, and aided him by giving him assistance, and his vote in the meeting of the directors. During the progress of the suit much testimony was taken. Among other things,

Pearson testified as to burning of lists. His testimony is not very clear, but he designates the list that was destroyed as the list of which copies were made in " their book." This testimony could only refer to the lists of 1895, for the reason that the original list books of 1892 were then and still are intact. One of the Torschs heard this testimony, and though at the time he may have supposed the books of 1892 were referred to, yet when he later on found that the only copies that were made were of the books of 1895, he could not have been at a loss to understand that the books burned were those of 1895. By the final decree, passed on the 24th of March, 1896, Pearson was ordered to pay over to the company $4,000, as having been credited without the authority of the directors, but all other forms of relief were denied. An appeal was taken, and while it was pending negotiations occurred between the Torschs and Pearson with the object of buying or selling the stock. These failed, however, and on the 28th of August Pearson and the three other directors—one of whom was the appellee— voted to make an assignment to Thomas G. Cranwell and Vernon Cook, and it was accordingly made. On the 23rd of September, 1896, the appellant with Pearson and Hawkins went into the same business together and became competitors with the packing company. Subsequently, the Torschs having acquired a majority of the packing company's stock, took steps with other stockholders to have the property restored to the company.

On the fifteenth day of October the Torschs asked and obtained of the trustees permission to examine the books of the company; and the appellee, who had been retained by the trustees, was present as their representative when the examination was made. All the safes were opened, and they were allowed to see the books, ledgers, etc. Mr. Torsch asked the appellee to see " the quoting list of the company for the raw oyster business." The appellee took out twelve green books and Mr. Torsch examined them and asked, " are these the quoting lists of the company? " and the appellee said, " yes, these are the lists." This is substantially the account

Mr. Torsch and two other witnesses give of the visit. He states he thought they were the lists of 1895, whereas in fact they were those of 1892. The testimony of the appellee differs somewhat from this—he states that Mr. Torsch did not ask him specifically, but only generally, for the books.

However this may be, it is not questioned that the books of 1895, or the copies thereof, were not then seen by him, and that the green books contained the lists of 1892. Two days after this, the appellee gave evidence in the proceedings for the return of the property, and testified that in addition to the copy made by himself and others he had made another copy of the list of 1895, for his own use, at a time when he anticipated going into business on his own account. In January, 1897, the Court having ordered the return of the property, the company resumed business. It was soon ascertained that the lists contained in the green books were not those of 1895, but of 1892. The secretary then wrote to the trustees for the quoting lists in use at the time of the assignment, and received a reply that everything that had been in their possession had been turned over to the company. He then addressed letters to Pearson, Hawkins, and the appellee, the members of the new firm, making of each the same request. The appellee replied by telephone that "the trade lists were on the shelf, behind the other books, in the office of the secretary, treasurer," etc. There the copy of the lists of 1895 was found. The secretary then, on February 9th, 1897, wrote to the appellee another letter, as follows: "We have found the hidden books, where you stated they could be found, but as they are copies, we renew our demand for the original books, described in our last letter, and we require you to deliver them on or before February 10th, 1897." Upon the advice of counsel the appellee made no reply to this. On the 16th of February he was arrested and required to give bail. On the 19th he was indicted for stealing the books, and on the 23rd, tried and acquitted.

In all the facts, as we have stated them, we find noth-

ing from which the jury could determine there were reasonable grounds to justify this arrest. Apart from the question that must arise when it is remembered that the appellee was the custodian of the books, at. first under the authority of the packing company and afterwards under the trustees, there cannot be found in all the long narrative of facts, a single reason to warrant even an incautious person in believing that the appellee had committed a larceny. It is true the books had been in the custody of the appellee, but appellants knew that he was a man whose character, as the evidence shows, was above reproach, whom not a month before one of the Torschs wanted to make " a new and large offer, and with absolute guarantee to yourself," and they also knew, or ought to have remembered, that the only missing list had been destroyed by Pearson, and that there were two copies of as much of it as was valuable in existence, one of which was in the possession of the company, and the other in the possession of the new firm. There was no fact in their possession or in their belief that indicated that the appellee had taken the books, and they had no right to assume that because the appellee had sided with Pearson in all the controversies over the affairs of the company that he had feloniously appropriated them.

Even if it were contended that they did honestly so believe, in view of the fact that the appellee had a copy of his own and the appellants knew it, such a contention could not be entertained. If it be conceded that the Torschs did not know that the lists of 1895 had been burned by Pearson, the mere fact that they were missing and could not be found, either standing alone or coupled with any or all of the facts then within the knowledge of the appellants as shown in the record, could not warrant a reasonable belief on the part of a cautious man that the appellee, who had been for many years a trusted and trustworthy employee, charged with the performance of important responsibilities which he had performed faithfully, had purloined the books for the purpose either of benefiting himself or of injuring

the appellants. To entitle the appellants to defeat the plaintiff's action there must be a concurrence of malice and a want of probable cause; and the definition of probable cause adopted by this Court as the most accurate is that given by JUDGE WASHINGTON (in *Munns* v. *Dupont*, 3 Was. C. C. Rep. 31), viz: "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty." *Boyd* v. *Cross*, 35 Md. 197. There was, we think, no reasonable ground of suspicion in this case, and no evidence from which the jury could find that there was.

It is contended, however, that the appellants acted without malice. Malice is ordinarily a question of law and fact, but when the facts are conceded, it is a question of law to be determined by the Court. Its existence will generally be inferred from the want of probable cause, though such an inference affords only a *prima facie* presumption that may be rebutted by the circumstances. *Boyd* v. *Cross, supra.*

Having determined there was no evidence from which the jury could find probable cause, and malice being *prima facie* presumable therefrom, the burden of proof rested on the appellants to show such a state of facts as would warrant the jury in finding that they were not actuated by malice. If the evidence is conflicting, or the facts presented by it are doubtful in their effect; or are such as have only an indirect bearing on the matter in issue; or in other words, if it be questionable whether the circumstances exist that are relied on to rebut the malice inferable from want of probable cause—in all such cases questions of fact are presented that must go to the jury for their decision, subject to the instructions of the Court as to their legal effect. *Thelin* v. *Dorsey*, 59 Md. 544, and cases there cited. Now was there in this case such a state of the proof as to warrant the Court in instructing the jury, that though the appellants acted without probable cause, yet they must find they acted without malice? For it is obvious that to enable the Court to direct them to find for the defendants, it was

compelled to decide either that there was probable cause, or that there was no malice, or that there was neither.

It may be stated here that the meaning of the word "malice" in this form of action is well settled. It is not to be regarded as merely a feeling of spite or hatred towards the individual, but as being any such mind that denotes that the party is actuated by improper and indirect motives; and therefore it was said in *Johns* v. *Marsh*, 52 Md. 333, "if a prosecution is initiated upon weak and unsubstantial ground, for purposes of annoyance or of frightening and coercing the party prosecuted, into the settlement of a demand, the surrender of goods or for the accomplishment of any other object, aside from the apparent object of the prosecution, and the vindication of public justice, the party who puts the criminal law in motion under such circumstances lays himself open to the charge of being actuated by malice. Such motives are indirect and improper, and for the gratification of which the criminal law should not be made the instrument."

The appellants' principal reliance to exonerate themselves from the charge of being actuated by improper motives, is that they acted under the advice of counsel. Now to justify them in instigating the prosecution, on this ground, where there is absence of probable cause, they must show that they acted in good faith upon the advice of counsel, given upon a full representation of all the facts. *Cooper* v. *Utterbach*, 37 Md. 315. Is the evidence on these points so conclusive as to leave nothing for the jury to determine? First as to their good faith; that is, did the appellants, upon the weak, unsubstantial grounds that have been stated, instigate the prosecution for the vindication of public justice, or for indirect and improper motives, for the gratification of which the law should not be made the instrument? One of the Torschs stated in his testimony that the object of the prosecution was "not to have him punished criminally, but to get the books." He had gone to the Trust Company, with whom the appellee had bonded, thinking it could exercise an influence that would cause him to

produce them.   Mr. Williams, the attorney of the company, said it was a matter which first had to be investigated by the State, and thereupon they went to the State's attorney and made the statement upon which the prosecution was begun.   Now when it is borne in mind that the appellants could not rebut the legal inference of malice arising from the want of probable cause without showing the existence of proper motives on their part, it would have been manifestly improper for the Court to deprive the jury of its right to consider this statement in connection with other facts in the case. Without stating it, we may also say, there was other testimony in the case tending to prove what the motives of the prosecutors actually were—all of which was submitted to the jury.

Second.   Were the representations made to the prosecuting officer a full statement of all the facts in the case?   Mr. Carr made a statement to him and also Mr. Torsch.   Was Mr. Carr's knowledge co-extensive with that of the appellants'?   The testimony of Mr. Charles H. Torsch leaves it an open question as to how much Mr. Carr did know.   According to Mr. Torsch, Mr. Carr did not know or tell that there was three lists of 1895, one an original and two copies, or whether the copies of 1895 were correct or not.   Neither Mr. Carr nor Mr. Torsch, according to the statement of the State's attorney, told anything about the appellee himself, his career or his character, nor of the three copies of the lists of 1895, one of which the appellee had kept himself, nor of the letter to the appellee asking for the books, nor of the reply and the finding of the copy on the shelf.   What was told the State's attorney states in his testimony, and it was that Torsch had gained control of the Pearson Company; that there were books they desired to secure the control of; that they had made demands on the appellee for the books, and he had replied, stating where they could be found; that they had gone there but could not find them, and that they wanted to go before the grand jury.   Whether the statement of the State's attorney was correct or not was a matter

for the jury, and if they believed in its correctness, it would have been improper for the Court to tell the jury that the appellants by making such a statement as that had discharged the duty that rested upon them of making a full statement of all the facts before they instigated proceedings that would subject an hitherto reputable individual to the humiliation of arrest and prosecution for a felony.

We are, therefore, of the opinion that the Court properly refused to take the case from the jury. We have already gone so fully into the question presented by the record that we deem it unnecessary to take up *seriatim* the several prayers offered by the respective parties. We have examined them all carefully and are of the opinion that the whole case was properly presented to the jury. For these reasons the judgment will be affirmed.

*Judgment affirmed.*

(Decided November 17th, 1898.)