BOARD OF COUNTY COMMISSIONERS FOR
PRINCE GEORGE'S COUNTY *v.* BADEN
VOLUNTEER FIRE DEPARTMENT,
INC., ET AL.

[No. 259, September Term, 1969.]

*Decided May 5, 1970.*

The cause was argued before HAMMOND, C. J., and
BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Albert J. Lochte,* with whom were *Lionell M. Lock-
hart, Harry L. Durity, James J. Lombardi, Martin Hertz,
James F. Sharkey, Barry S. Cramp* and *Emil A. Nichols*
on the brief, for appellant.

*Karl G. Feissner,* with whom were *William L. Kaplan,
Thomas P. Smith, Fred R. Joseph* and *Andrew E. Green-
wald* on the brief, for appellees Baden Volunteer Fire De-
partment, Inc., and others.

*Thomas V. Moore* for appellees Bladensburg Volunteer
Fire Department and Rescue Squad, Inc. and others.

MCWILLIAMS, J., delivered the opinion of the Court.

Lest our opinion become unduly prolix it behooves us
to be somewhat eclectic in our recital of the facts and cir-
cumstances attending this dispute over the distribution of
fire tax funds in Prince George's County. The parties,
none of whom are strangers to us, have been able to re-
solve all facets of their present differences except one,
i.e., whether the appellant (the County) is entitled to
withhold $136,000 (actually $135,833.33) from funds
found to be the due the appellees (the firemen).

In 1967 the firemen discovered that the County had been
collecting the taxes authorized by the provisions of Sub-
title 32, "Fire Companies," of the Prince George's County
Code (1968), which, they charged, should have been paid
out to them to "be used for the purpose of purchasing,
repairing, replacing, operating and maintaining * * *
[their] fire fighting equipment and apparatus and the
housing of the same * * *." *Id.* at § 32-10. On 8 August
1967 they filed a bill of complaint to obtain possession of
the funds which they alleged the County had "wrongfully
and improperly" withheld. The chancellor, Bowie, J., ap-

pointed a firm of certified public accountants to determine "the amount of undistributed fire taxes." It surprised no one that the accountants thought the "complex laws relating to [the] collection and distribution of fire taxes * * * should be amended as soon as practicable." In due course the chancellor ordered "the undistributed fire taxes" then held by the County "to be disbursed" to the firemen. On the same day, 23 January 1968, he passed a "supplemental order" in which he declared $709,533.69 to be "the fund due" the firemen, indicating also that the figure was "not subject to change." Less than a month later, 13 February 1968, he allowed interest of $20,000 and in the same order he declared the "total fund" (after adding the interest) due the firemen to be $729,533.69. He also allowed a counsel fee of $45,000 to counsel for the firemen. His decree concludes with the words "[a]ll other provisions of this court's final decree and supplemental order of January 23, 1968, not inconsistent herewith are ratified and confirmed." Just below the chancellor's signature are the words *"we consent to the entry of this decree"* (emphasis added) ; subscribed are the signatures of counsel both for the County and the firemen. On 13 March 1968 the chancellor ordered the disbursement of $500,000 of the $729,-533.69 found to be due. The County seems not to have objected.

On 18 December 1968 the firemen filed a petition asking the court to direct the payment of the balance due them, i.e., $229,533.69 ($729,533.69-$500,000). The County promptly objected claiming it had paid $136,000 to the firemen during 1965 and 1966 and that it was entitled to a credit for that amount.

After a hearing in open court on 28 January 1969 the chancellor held the matter *sub curia* until 27 March, at which time he filed his opinion and order. He noted the parties had "indicated that the amount stated in the Consent Decree [13 February 1968] to wit, $729,533.69 is correct." He noted also a statement by the County that it was "in no way attacking the validity of * * * [the decree of 13 February 1968] thereby conceding that the de-

cree is enrolled and binding." He found as a fact that the money ($136,000) "used for the 'Paid Man Program' was an unauthorized use of the undistributed fire taxes collected and held by the County." Perhaps it should be observed that the "Paid Man Program" was nothing more than a reasonably equitable disbursement of funds to individual fire companies for the sole purpose of enabling them to employ drivers; otherwise the equipment would not be able to turn out for daytime fires as nearly all of the volunteers would be at work. Nevertheless he held that to refuse the credit "would amount to [the] unjust enrichment" of the firemen at the expense of the County. Shortly thereafter, however, he was persuaded to set aside the decree and to grant a rehearing. On 18 June he filed an opinion and decree in which he changed his position and ordered the inclusion of the $136,000.

The chancellor found it unnecessary, in his final opinion, "to determine whether or not there was authorization for the County to disburse funds for the 'Paid Man Program' in 1965." He concluded that:

> "[T]he weight of the evidence supports the [firemen's] contention that the * * * [$136,-000] was disbursed * * * for the sole purpose of compensating the 'Paid Men.' In this regard the Fire * * * [Companies] were mere conduits for the payment of these employees. * * * [B]oth the Fire Departments and the County received a benefit from having men stationed at the various fire houses during the day when it is often difficult to insure that a full complement of volunteers will be on hand at the time of an emergency. * * * Having no knowledge of the specific purposes for which the funds were collected, the [firemen] cannot be held accountable for the misuse of the funds. The County, on the other hand, knew the use for which these funds were intended and despite this knowledge caused the money to be distributed * * * for the 'Paid Man Program'."

He went on to point out that the County accepted the services of the "paid men" and that it "did receive the benefit, in the form of more adequate fire protection for its citizens."

I.

We think, as did the chancellor, that the County's attempt to establish a credit of $136,000 comes too late. In the "Final Decree" of 23 January 1968 reference is made to an earlier, 29 November 1967, decree nisi, to which "no objection has appeared." In his second and final opinion the chancellor said it was "apparent that, at the time the Consent Decree was entered into [16 February 1968] all parties were apprised of the existence of the disputed sum [$136,000]. The matter [he continued] was not raised then and undoubtedly the * * * [firemen] considered the matter as settled, and the court believes that they had ample reason to so consider it." He was under the impression himself "that any disputes then existing had been resolved."

It is at once obvious that when the firemen filed their petition, on 18 December 1968, asking for the final payment of the balance due them, all of the prior orders and decrees had long since become enrolled and were subject to revision only in case of fraud, mistake or irregularity. Maryland Rule 625 a; *Wooddy v. Wooddy,* 256 Md. 440 (1970). Indeed the only timely objection made to any of the orders and decrees was to the allowance of a counsel fee to counsel for the firemen. It is plain, we think, that the County's attempt to block the final distribution of the amount found to be due by claiming a credit arising out of disbursements made long before the firemen filed their bill of complaint is, in effect, a collateral attack upon the enrolled decree. See *Fisher v. Demarr,* 226 Md. 509, 514-15 (1961); *James Clark Co. v. Colton,* 91 Md. 195, 206 (1900); *Kemp v. Cook,* 6 Md. 305 (1854); *Richardson v. State,* 2 Gill 439 (1845); and 46 Am.Jur.2d, *Judgments* § 640 (1969). Even if the judgment or decree is erroneous or voidable, matters which might have been raised as a defense in the original action cannot be made the

basis of a collateral attack. *E.g., Fisher v. Demarr, supra* at 515 and the cases cited therein; *see* 49 C.J.S., *Judgments* § 435 (1947). To the same effect is *Garrett Park v. Montgomery County Council,* 257 Md. 250 (1970).

The County concedes that the consent decree "was intended to put all of these vexing fiscal and tax matters to rest." It agrees also that "[n]o repayment from the fire companies is sought or desired." Yet it argues that "the decree is a final one and should not be reopened so as to allow this additional *'raid'* of $136,000 which has already been paid over to the fire companies." (Emphasis added.) We find this somewhat puzzling. We had thought it was the County that was seeking a revision of the decree. It seems to us the County is putting it a little too high when it characterizes the firemen's move as a "raid." It surely got value received for the $136,000 and it is entirely clear that the $729,533.69 *must be used* by the firemen for "the purpose of purchasing, repairing, replacing, operating and maintaining" their fire fighting equipment and apparatus "and the housing of the same." Prince George's County Code, § 32-10 (1968). We do not look upon this as unjust enrichment.

## II.

The County contends that it was without notice as to the issues to be argued at the 5 May hearing and was thus denied due process of law. Its position in this regard is difficult to understand. It concedes in its brief that it was apprised of the hearing by Judge Bowie's law clerk; it argues, however, that the communication should have come from Judge Bowie himself. Oddly enough, in a petition filed 1 May in opposition to the firemen's motion for rehearing, the County stated that it "now believe[s] that a rehearing on the merits is scheduled for May 5, 1969." Since the contention borders on the frivolous, we shall not discuss it any further.

*Decree affirmed.*
*Costs to be paid by the appellant.*