RICHARD ANTHONY WESKO ET UX.
*v.* G.E.M., INC. ET AL.

[No. 758, September Term, 1972.]

*Decided October 23, 1973.*

162

The cause was argued before ORTH, C. J., and MORTON and POWERS, JJ.

*R. Leo Kent* and *Alfred J. O'Ferrall, III,* with whom were *C. Peter BeLer* and *Charles Edward Mentzer* on the brief, for appellants.

*David M. Buffington* and *Robert E. Scott, Jr.,* for appellees.

POWERS, J., delivered the opinion of the Court.

Appellants here, Richard A. Wesko and Patricia Wesko, his wife, filed a suit in the Circuit Court for Baltimore County against G.E.M., Inc. and GEM International, Inc.[1]

---

1. Other corporations of the G.E.M. corporate family were originally named as defendants, but it was later stipulated that G.E.M., Inc. and GEM International, Inc. were the appropriate defendants.

claiming that both compensatory and punitive damages should be awarded to each of them because of steps taken by or on behalf of the defendants in a civil suit for debt.

In their declaration the Weskos alleged that for several years they had been customers of G.E.M., a large retail and mercantile business, under various credit plans and credit cards. They alleged that during 1968 their account had fallen into arrears and that in November, 1968, G.E.M. filed suit against them in the People's Court of Baltimore County and obtained a judgment against them, entered on 11 February 1969. G.E.M.'s attorney caused a copy of the People's Court judgment to be recorded in the Circuit Court for Baltimore County. On 24 February 1969 the Wesko account was paid in full to G.E.M.

Plaintiffs below further alleged that in October, 1969, the attorney who obtained the judgment ordered the issuance of an attachment on the judgment to be served on Mr. Wesko's employer, Bethlehem Steel Company. The attachment was served, and a portion of Mr. Wesko's wages was withheld.

Upon these basic allegations, Mr. Wesko asserted under the heading, "Case A" in the declaration what he styled as nine separate causes of action. Mrs. Wesko, under the heading, "Case B", incorporated all of the allegations made in Case A, and made additional allegations concerning her right to her own name and reputation and her right to be employed. She claimed compensatory and punitive damages "under each cause of action considered above or all of them considered together".

The causes of action alleged by Mr. Wesko and adopted by Mrs. Wesko, each incorporating the general factual allegations, were:

First: He was wrongfully deprived of his property, thereby causing physical loss and mental anguish.

Second: Defendant's actions suggested that plaintiff could not be trusted to pay his debts and therefore could not be trusted, and were

such as to slander and libel him and damage his name and reputation.

Third: Defendant's actions were wrongful and malicious and fraudulent interference with plaintiff's employment contract and his rights in connection with his employment.

Fourth: Defendant wrongfully and without authority divulged confidential and personal information, which was false, about plaintiff.

Fifth: Defendant's actions were an invasion of plaintiff's right of privacy.

Sixth: Defendant obtained judgment against plaintiff through fraud, irregularities and misrepresentation.

Seventh: Defendant caused plaintiff to suffer "slander and libel by judgment" in wrongfully obtaining judgment, and after the debt was paid improperly transferred the judgment to the Circuit Court, where it was recorded and became available for public inspection.

Eighth: Defendant's actions were a misuse of judicial process because after the judgment was wrongfully recorded in the Circuit Court, defendant used the false and fraudulent judgment as a basis for an attachment of plaintiff's wages.

Ninth: Defendant acted wrongfully and with malice and fraud. (This cause of action does not allege any separate wrongful act, but contains allegations which appear to be designed to lay the foundation for allowance of punitive damages.)

Prior to trial a demurrer to the sixth cause of action was sustained by the court without leave to amend. Appellants do not claim in this Court that there was error in that ruling.

Trial of the case was held before Judge W. Albert Menchine and a jury in the Circuit Court for Baltimore County on 10, 11, 12 and 15 May, 1972. Each of the appellants testified and, in addition, presented evidence through various witnesses, including Robert E. Schwalenberg, G.E.M.'s division credit manager, and N. Frank Lanocha, the attorney who represented G.E.M. in the collection proceedings culminating in the judgment and the subsequent attachment. G.E.M. also called Mr. Schwalenberg and Mr. Lanocha, as well as three witnesses whose testimony dealt with the question of damages.

The evidence showed that the overdue account which the Weskos owed to G.E.M. was referred by the credit office of the Baltimore stores to Mr. Lanocha in July of 1967 for collection. Mr. Lanocha testified that within a day or so he wrote to the Weskos and advised them that the account was in his hands for collection, and that he also wrote them several subsequent letters. He asked that they make payments on the account to him. He said that no payments were made to him, but a few were made directly to one of the stores in Baltimore, and the store notified him. However, the account remained delinquent, and in November of 1968 he filed suit for the balance then due in the People's Court of Baltimore County. In February of 1969 judgment was entered against the Weskos on a motion for summary judgment supported by an affidavit made by the local credit manager. The attorney obtained a copy of the judgment, which was filed in the Circuit Court for Baltimore County on 17 February 1969.

Mr. Lanocha wrote the appellants on 13 February, advising them of the judgment, and stating that if arrangements for payment were not made, he would attach their assets. Because he had heard nothing from the Weskos and had not been advised of any payments on the judgment, he caused an attachment to be issued in October 1969 against Mr. Wesko's wages and served on his employer.

On the day that Mr. Wesko received his paycheck, reduced to $100.00, with a notice that his employer was withholding $42.25 because of G.E.M.'s attachment, he called Mr.

Lanocha and also called Mrs. Wesko. She later that day had two telephone conversations with the attorney. Between those conversations Mr. Lanocha called the G.E.M. office at Hyattsville, where the credit records were maintained, and was advised that payment of the full balance of the Wesko account had been made. He called Mrs. Wesko back and told her that he had confirmed payment, and would dismiss the attachment and close out the case. He talked again to Mr. Wesko, and told him the same thing. On the same day he prepared and sent to the court an order of satisfaction and dismissal, and sent copies to the legal office of Bethlehem Steel.

In addition to his telephone conversations with Mr. and Mrs. Wesko and with G.E.M., Mr. Lanocha said that on the same afternoon he received a call from an attorney representing the Weskos, accusing G.E.M. of willfully, knowingly, and falsely attaching Mr. Wesko's wages. Mr. Lanocha testified:

" * * * I tried to explain to him that that wasn't so, obviously. It wasn't our intention to willfully, knowingly and so forth, to attach the wages, that it is, very obviously, a goof, that with the amount of accounts that G.E.M. may handle, it is very obvious that the human factor came into the picture. I just wasn't notified about it, and, of course, had I known, I wouldn't have filed the attachment, * * *."

Mr. Schwalenberg testified that he was the division credit manager for G.E.M., with headquarters at Hyattsville, and that he had general supervision over the credit accounts of the stores known as Baltimore West and Baltimore East, as well as those of other stores in the Washington Suburban Area and Virginia. He said that there was a credit manager at the Baltimore West store, and over him was a city credit manager for the two Baltimore stores. Credit records for all stores were kept at Hyattsville. When the Hyattsville office considered an account to be delinquent, a copy of the ledger card was sent to the appropriate store. The decision to refer an account to an attorney for collection was made by the city

credit manager. When that was done, it was the procedure to make a notation on the face of the ledger card in Hyattsville that the account had been referred to an attorney. Mr. Schwalenberg testified that in this particular case that was overlooked; the Wesko account was not so marked; and that failure to mark it was a mistake. Because the ledger card was not so marked, the credit office did not advise the collection attorney when full payment of the account was made at one of the Baltimore stores, approximately two weeks after the entry of judgment.

Mr. Schwalenberg testified that the attachment resulted from a clerical mistake. He said that he had never met nor talked to Mr. Wesko and had no personal grudge or anything against him at all.

At the close of the evidence offered by the plaintiffs on the issue of liability, the defendants filed motions for a directed verdict as to each cause of action in each claim. The trial judge granted the motions as to the first and third causes of action in Case A, and as they were adopted in Case B. At the close of all of the evidence, the motions were made again as to the remaining causes of action. At that time the court granted the defendants' motion for a directed verdict as to the second, fourth, fifth and seventh causes of action as to Mr. Wesko, and denied the motion as to the eighth cause of action. The judge commented that he interpreted the ninth cause of action merely as a claim for punitive damages which he would allow the jury to consider. As to all of Case B asserting the claims of Mrs. Wesko, the court granted the motion for a directed verdict. The case was submitted to the jury for consideration of the claim asserted by Mr. Wesko in his eighth cause of action, for misuse of judicial process, including his claim for punitive damages as asserted in the ninth cause of action.

The jury returned a verdict in favor of Mr. Wesko and assessed compensatory damages at $5,000.00, and assessed punitive damages at $15,000.00.

Thereafter the court, upon consideration of defendants' motion for judgment n.o.v., timely filed, granted that

motion. Motions for a new trial were denied. Judgment absolute was entered in favor of the defendants for costs.

Both plaintiffs appealed. In their brief here they pose the questions presented as follows:

1. Was it error to grant Judgment N.O.V. to strike out the Jury verdict of compensatory damages and exemplary damages for Richard Wesko as to malicious prosecution?

2. Was it error to grant Directed Verdicts as to the claims of Richard Wesko for slander and libel?

3. Was it error to grant Directed Verdicts as to the claims of Richard Wesko for invasion of privacy?

4. Was it error to grant directed verdicts as to the claims of Patricia Wesko for slander and libel, and invasion of privacy?

5. Should all of the claims of Richard Wesko and Patricia Wesko have been submitted to the Jury "en masse"?

In their brief, appellees present these questions:

1. Did the trial court properly rule that there was no legally sufficient evidence of malice to support the verdict against appellees for malicious prosecution of a civil action?

2. Did the trial court properly direct verdicts in favor of appellees as to the counts alleging slander and libel?

3. Did the trial court properly direct verdicts in favor of appellees as to the counts alleging invasion of privacy?

4. Did the trial court err in its instructions to the jury concerning punitive damages?

5. Did the trial court err in its rulings on the admission of evidence?

A contention that it was error to grant the judgment n.o.v.

merely raises the question whether the motion for a directed verdict should have been granted when the motion was made. The single question, as we see it, is whether the evidence was legally sufficient to entitle the jury to find in favor of either or both of the appellants on any of their claims for malicious prosecution, defamation, or invasion of privacy. The contention of appellants that all of their claims should have been submitted to the jury "en masse" is rare, if not unique. No supporting authority is suggested to us. We know of none. The appellants alleged several different causes of action, combined in one declaration, which Maryland Rule 313 permits them to do. But before any one of the several causes of action may be submitted to a jury, the evidence supporting it must be sufficient unto itself. Evidence insufficient to support one cause of action may not be borrowed for another cause of action, itself insufficiently proved, so as to add up to legal sufficiency.

### The People's Court Judgment

The sixth cause of action declared by appellants was based specifically upon the proceedings resulting in the judgment against them in the People's Court. Such an attack when made in this case was collateral. No direct attack was ever made. A collateral attack is not permitted. In *Board v. Baden Volunteer Fire Dep't*, 257 Md. 666, 264 A. 2d 844, the Court of Appeals said at 670-71:

"Even if the judgment or decree is erroneous or voidable, matters which might have been raised as a defense in the original action cannot be made the basis of a collateral attack."

See also *Fisher v. Demarr*, 226 Md. 509, 174 A. 2d 345.

Not only was the People's Court judgment unassailed, but anything said in that proceeding by G.E.M. or its agents was privileged. This privilege was discussed by the Court of Appeals in *Kennedy v. Cannon*, 229 Md. 92, 182 A. 2d 54. The Court said, at 97:

"This absolute immunity extends to the judge as well

> as to witnesses and parties to the litigation, for defamatory statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, and other documents directly related to the case."

In *DiBlasio v. Kolodner*, 233 Md. 512, 197 A. 2d 245, Chief Judge Brune discussed the principle further, and reiterated the Court's view expressed in *Kennedy v. Cannon.*

We have noted that a demurrer to the sixth cause of action was sustained without leave to amend. That cause of action is not before us in this appeal, but we have discussed it because what was separately alleged there was also alleged as a part of the second, fifth, seventh and eighth causes of action.

Since the steps followed by G.E.M. and its agents in obtaining the People's Court judgment and in recording a copy of that judgment in the Circuit Court were not subject to collateral attack, and were privileged, they constitute no actionable wrong. The second, fifth, seventh, and eighth causes of action must be viewed accordingly. The only additional allegation in the seventh cause of action was that the judgment was improperly recorded in the Circuit Court after the debt was paid. The proof showed otherwise. We consider the eighth cause of action as alleging a misuse of judicial process only in the attachment of Mr. Wesko's wages. The second and fifth causes of action, as we view them, as well as the first and third causes of action as alleged, do no more than state some of the consequences of the alleged misuse of judicial process covered in the eighth cause of action.

Except for his view at that time that the evidence was legally sufficient to support the claim that the wage attachment was a misuse of judicial process, the rulings made by Judge Menchine at the close of the evidence were correct. There was simply no evidence to support the allegation in the fourth cause of action that G.E.M. wrongfully divulged false confidential and personal information about Mr. or Mrs. Wesko. The first, second,

third, fifth, seventh, and ninth causes of action as alleged were supported only by evidence which was appropriate to the eighth cause of action, insofar as it alleged misuse of judicial process in the wage attachment, or to the damages alleged to have flowed from the attachment.

There was no wage attachment against Mrs. Wesko. There was no evidence legally sufficient to support any cause of action asserted by her. The direction of a verdict for the defendants as to all of Case B was proper.

### *The Wage Attachment*

If there were in our tort law a right of action for *negligent* use of civil process, the evidence in this case would establish overwhelmingly that Mr. Wesko had that right of action against G.E.M. But no such tort exists. Mr. Wesko's right against G.E.M. depends on whether the evidence was legally sufficient to show that causing the issuance of an attachment against Wesko's wages was a *malicious* use of process by G.E.M.

We have carefully examined the numerous cases and other authorities exhaustively briefed by the parties. The law in Maryland has been clearly stated by the Court of Appeals in a number of cases. Reference to just a few of them will be sufficient to show that the trial judge below correctly granted the motion of the defendants for judgment n.o.v.

Speaking for the Court in *Owens v. Graetzel*, 149 Md. 689, 132 A. 265 (1926), Judge Parke said, at 695-96:

> "While it is recognized that the appellate courts of the jurisdictions in the United States are in conflict, yet it is unnecessary for us to determine the weight of authority, because this tribunal early and steadfastly has held that no action will lie for the institution and prosecution of a civil action with malice and without probable cause, when there has been no arrest of the person nor seizure of the property of the defendant, and no special injury sustained which would not ordinarily result in all suits prosecuted for like causes of action, but that

the action will lie wherever the defendant in the malicious suit has been deprived of his personal liberty, or of the possession, use or enjoyment of property. *Supra; McNamee v. Minke,* 49 Md. 122; *Supreme Lodge, etc. v. Unverzagt,* 76 Md. 104, 105, 108; *Bartlett v. Christhilf,* 69 Md. 219, 228; *Reiger & Co. v. Knight,* 128 Md. 189, 193, 197; *Wegefarth v. Wiessner,* 134 Md. 555, 568.

For the maintenance of an action for malicious prosecution there must co-exist and be shown: (1) the institution of the civil proceedings, (2) without probable cause, (3) with malice; (4) that the proceedings have terminated and in the plaintiff's favor, and (5) that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property or other special injury, which would not necessarily result in all suits prosecuted to recover for a like cause of action. *McNamee v. Minke,* 49 Md. 122, 133, 135; *Supreme Lodge, etc., v. Unverzagt,* 76 Md. 104, 108. Hence the civil action for malicious prosecution will fail unless there were both want of probable cause and malice in the institution of the proceedings complained of; and of these two indispensable elements the want of probable cause is the more important, because if it be established by the proof, malice may be inferred."

The distinction between cases founded upon abuse of process and those arising from malicious use of process (civil) or malicious prosecution (criminal) was clearly drawn by the Court of Appeals in *Walker v. American Security Co.,* 237 Md. 80, 205 A. 2d 302 (1964), where Judge Horney said for the Court, at 87:

"A tort action for abuse of process, on the one hand, and the tort actions for malicious prosecution and malicious use of process, on the other hand, are essentially different and independent actions. An action for abuse of process differs from actions for

malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause. 1 Am. Jur. 2d, *Abuse of Process*, § 2; Prosser, *Torts* (2nd ed.), Ch. 21, § 100, p. 667. See also *Bartlett v. Christhilf*, 69 Md. 219, 14 Atl. 518 (1888); *Zablonsky v. Perkins*, 230 Md. 365, 187 A. 2d 314 (1963); *Capitol Electric Co. v. Cristaldi*, 157 F. Supp. 646 (D. Md. 1958). Actions for malicious prosecution and malicious use of process have the same essential elements and are often referred to as being essentially synonymous, with most of the cases referring to malicious prosecution as arising out of a criminal proceeding and malicious use of process as arising out of a civil proceeding."

Most recently the Court of Appeals had before it the case of *Siegman v. Equitable Trust Co.*, 267 Md. 309, 297 A. 2d 758 (1972), which involved a three count declaration against a bank by a husband and wife who were joint depositors. They alleged that the bank wrongfully dishonored their checks, converted the proceeds of their joint checking account (by charging against it the amount of a check which had been endorsed and cashed by the husband, and on which a prior endorsement turned out to be a forgery), and wrongfully sued them in a case that they described as "civil malicious prosecution". The bank had sued the two joint depositors for the amount by which the bad check exceeded the balance in the joint account when the charge was made against it. The bank had lost that suit.

The trial judge in *Siegman* granted the bank's motion for

a directed verdict on the "malicious prosecution" count. For wrongful dishonor and for conversion the jury assessed both compensatory and punitive damages. The trial judge granted judgment n.o.v. as to the punitive damages, and the depositors appealed. They contended that the trial court erred in disallowing the punitive damages, and in granting the directed verdict on the "civil malicious prosecution" count.

The Court of Appeals, in an opinion written for the Court by Judge Digges, rejected both contentions. It recognized the tort of wrongful dishonor, and commented that it saw no reason why, under proper circumstances, punitive damages should not be permitted in a wrongful dishonor case. At 315. On the question whether the evidence in that case permitted punitive damages Judge Digges said, at 316:

> "The issue before us, therefore, is whether there is sufficient evidence of actual malice or its legal equivalent that would permit an award of punitive damages. We agree with the trial court that there was not. Here, all the record indicates is that the bank, on a mistaken understanding of the law, attempted to satisfy out of a joint checking account the individual debt of Mr. Siegman created by his indorsement on a forged check. There is no evidence that the bank either converted his funds or refused to honor his checks out of evil motives intended to injure the Siegmans. Although it acted so as to damage the appellants, the bank was motivated by self interest rather than by a malicious desire to harm the appellants. However, the bank was careless and for this lack of care the appellants were compensated to the tune of $5,000. To justify an award of punitive damage ($15,000) the Siegmans were required to show that the conversion and wrongful dishonor of their check were accompanied by actions which manifest actual malice or its legal equivalent. The record is devoid of such proof. Rather than demonstrating such ill will, the evidence here shows the contrary."

The Court further said, at 317:

> "As we have already determined that there was no evidence of malice present, a fortiori there can be no recovery for civil malicious prosecution."

It is perfectly clear in *Siegman* that the Court held as a matter of law that there was not sufficient evidence of actual malice or its legal equivalent, and further held as a matter of law that the uncontroverted evidence in the case showed that the actions of the bank resulted from a mistake and from self interest, but not from ill will or from a desire to harm the Siegmans.

Appellants here contend that they were not required to prove any malice; that malice may be inferred from the lack of probable cause. They rely on a number of Maryland cases, including *Torsch v. Dell*, 88 Md. 459, 41 A. 903; *Goldstein v. Rau*, 147 Md. 6, 127 A. 488; *Safeway Stores v. Barrack*, 210 Md. 168, 122 A. 2d 457; and *Banks v. Montgomery Ward & Co.*, 212 Md. 31, 128 A. 2d 600.

All of these cases involve claims of malicious prosecution by the institution of criminal charges, but as the Court of Appeals said in *Walker v. American Security Co., supra,* malicious prosecution and malicious use of process have the same essential elements.

In *Torsch v. Dell, supra,* the Court said, at 467:

> "It is contended, however, that the appellants acted without malice. Malice is ordinarily a question of law and fact, but when the facts are conceded, it is a question of law to be determined by the Court. Its existence will generally be inferred from the want of probable cause, though such an inference affords only a *prima facie* presumption that may be rebutted by the circumstances. *Boyd v. Cross, supra.* [35 Md. 197].
>
> Having determined there was no evidence from which the jury could find probable cause, and malice being *prima facie* presumable therefrom, the burden of proof rested on the appellants to

show such a state of facts as would warrant the jury in finding that they were not actuated by malice. If the evidence is conflicting, or the facts presented by it are doubtful in their effect; or are such as have only an indirect bearing on the matter in issue; or in other words, if it be questionable whether the circumstances exist that are relied on to rebut the malice inferable from want of probable cause — in all such cases questions of fact are presented that must go to the jury for their decision, subject to the instructions of the Court as to their legal effect."

The Court in *Goldstein v. Rau, supra,* said, at 13:

"Malice is also a necessary element but, when not negatived, it may be inferred by the jury from the absence of probable cause, though no express malice be shown."

Again expressing the same rule the Court said in *Safeway Stores v. Barrack, supra,* at 175:

"The presumption of malice resulting from the want of probable cause is only *prima facie* and may be rebutted by the circumstances under which the defendant acted."

And in *Banks v. Montgomery Ward & Co., supra,* the Court said, at 42:

"Where there is lack of probable cause, malice may be inferred, although the inference may be rebutted by the defendant. The question of malice, that is, the question of whether the defendant acted from other than proper motives, unlike probable cause, is a question for the jury. *Torsch v. Dell,* 88 Md. 459."

The Court's statement, just quoted, that malice is a question for the jury, must be understood to refer to the statement in the cited case, *Torsch v. Dell, supra,* where the Court said that questions of fact must go to the jury when the evidence

is conflicting or the facts presented by it are doubtful in their effect, as the converse of its prior statement that when the facts are conceded, malice is a question of law to be determined by the court.

The inference, said to be *prima facie*, or rebuttable, serves the important function of filling a void, when there is no credible direct evidence to prove or disprove an ultimate fact. When there is direct evidence of a fact, the inference loses its force, and can do no more than stand on the sidelines, to reenter the fray only if the direct evidence is rejected as incredible. *Hanes v. State, Use of Lamm*, 236 Md. 28, 34-36, 202 A. 2d 364 (1964). If conflicting direct evidence develops, then that conflict is resolved by the trier of facts on the basis of the conflicting evidence, not by use of the inference.

A presumption frequently encountered is that the operator of a motor vehicle is acting as the agent of the owner. This presumption was recently considered by the Court of Appeals in *Williams v. Wheeler*, 252 Md. 75, 249 A. 2d 104, where Judge Barnes, writing for the Court, quoted from *Taylor v. Wesley Freeman, Inc.*, 186 Md. 474, 47 A. 2d 500, where the Court said, at 477:

> "This presumption is only *prima facie* and may be rebutted and overcome by evidence to the contrary produced during the trial by any of the parties to the suit. Where such evidence is undisputed and not contradicted, it becomes properly a question for the court."

In *Williams v. Wheeler, supra*, where the only evidence on the question of agency came from the defendants, who were called by the plaintiffs as adverse witnesses, and whose testimony was unimpeached and uncontradicted, the Court said, at 83:

> "We believe that, as the defendants' testimony was uncontradicted, the presumption was rebutted, and that in the absence of any other evidence, the question was one for the court to decide as a matter

of law. As there was no evidence on which a finding of agency could be based, the jury cannot be allowed to merely speculate."

We conclude that the evidence in this case was not legally sufficient to entitle the jury to find in favor of either Mr. or Mrs. Wesko on any of their claims against the appellees. The trial judge ruled correctly in granting the motions for directed verdict which he granted at the close of the evidence, and he was correct in thereafter granting the motion for judgment n.o.v.

Because we shall affirm the judgment below, we need not consider whether appellees were entitled to contend here, in the absence of a cross appeal, that the judge erred in instructions and in admitting certain evidence, nor need we consider appellants' motion ne recipiatur or to strike those parts of appellees' brief in which those contentions were argued.

The motion of appellants to supplement the record by supplying a more legible copy of an exhibit received in evidence at the trial is granted, and the more legible copy is included in the record.

*Judgment affirmed.*
*Appellants to pay costs.*