# NETTIE GOLDSTEIN et al. *vs.* JULIA F. RAU.

*Malicious Prosecution—Probable Cause—Prayers and Instructions—Evidence.*

In an action for malicious prosecution, it was proper to instruct the jury that if they found for plaintiff they were at liberty to consider all the circumstances and award such damages as would not only compensate plaintiff for the wrong and indignity she sustained in consequence of the defendants' and each of their wrongful acts, but might also award exemplary or punitive damages as a punishment to the defendants for such wrongful acts.                                          pp. 7, 12

A prayer offered by defendant in a suit for malicious prosecution *held* properly refused as argumentative.          p. 12

A prayer that plaintiff has offered no evidence legally sufficient under the pleadings in this case against a named one of the defendants, and that, therefore, the verdict must be in favor of said defendant, was defective, being a variance prayer which failed to set out in what the variance consisted.      pp. 8, 12

In a suit for malicious prosecution, a prayer of a defendant which sought to submit to the jury only the question whether he swore out the warrant of arrest, omitting all reference to his participation otherwise in the prosecution, *held* properly refused, another prayer of that defendant, by submitting to the jury the question of such participation, conceding that there was evidence thereof.                                    p. 12

In a suit for malicious prosecution, the burden is on plaintiff to prove that the prosecution was instigated by defendant without probable cause, and that it terminated in an acquittal, dismissal, or abandonment.                                 p. 13

Malice, though a necessary element, may be inferred by the jury, if not negatived, from the absence of probable cause. p. 13

Where probable cause is shown, suit for malicious prosecution will not lie, whatever the actual motive for the prosecution. p. 13

Probable cause is such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, as to warrant a cautious man in believing the party accused to be guilty.                    p. 13

Whether the evidence in any given case is legally sufficient to show want of probable cause is a question of law.                    p. 13

In an action for malicious prosecution of plaintiff on account of alleged violation of a city ordinance in allowing a dog, by its barking, to disturb the neighborhood, *held* that, it appearing that the dog belonged not to plaintiff, but to plaintiff's brother, and that defendants, although plaintiff spoke of it as "my" dog, might properly have ascertained the ownership before instigating the prosecution, a judgment for plaintiff would not be disturbed.                    p. 16

*Decided January 14th, 1925.*

Appeal from the Baltimore City Court (DUFFY, J.).

Action by Julia F. Rau against Nettie Goldstein, Oscar Cecil and others. From a judgment for plaintiff, the named defendants appeal. Affirmed.

The granted prayers of plaintiff were as follows:

*Second.*—The jury are instructed that probable cause is such reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty.

*Third.*—If the jury should find their verdict for the plaintiff they are at liberty to take into consideration all the circumstances of the case and award such damages as will not only compensate the plaintiff for the wrong and indignity she has sustained in consequence of the defendants and each of their wrongful acts, but may also award exemplary or punitive damages as a punishment to the defendants for such wrongful acts.

The prayers offered by defendant Nettie Goldstein were as follows:

*First.*—Nettie Goldstein, one of the defendants in this case, prays the court to instruct the jury that the plaintiff has offered no evidence legally sufficient to entitle the plaintiff to recover and the verdict must be for the said defendant.

*Second.*—The court instructs the jury that the plaintiff has offered no evidence legally sufficient under the pleadings in this case against Nettie Goldstein, one of the defendants in this case, and, therefore, the verdict must be for said defendant, Nettie Goldstein.

*Third.*—The jury are instructed that this suit is brought on a theory that the arrest of the plaintiff was caused by the defendant, Nettie Goldstein, wrongfully, in the view of the law. This case does not present for decision merely the question of whether or not the plaintiff violated the ordinance mentioned in the declaration, and therefore the acquittal of the plaintiff for the alleged violation of the said ordinance, does not decide the question in this case, for even though a person arrested may be acquitted of the charge on which the arrest is made, nevertheless, the arrest may still have been lawful and proper without making persons who promote the arrest liable in a suit for damages such as this; that the jury are further instructed that the liability of any defendant in malicious prosecution cases is incurred only when the arrest or subsequent proceedings are promoted upon a false charge, out of malice and without probable cause for promoting it; that the jury are instructed that by the uncontradicted evidence in this case that Nettie Goldstein interested herself with others to cause to have abated by due process of law, what they and she thought was a nuisance detrimental to the persons living in the neighborhood from the place where the dog mentioned in the evidence was allowed and permitted to remain and be maintained, and, therefore, their verdict must be for the said defendant, Nettie Goldstein.

*Fourth.*—The court instructs the jury if they find from the evidence that the defendant, Nettie Goldstein, together with others, was prompted by public motives to have what they and she thought was a nuisance abated and that such nuisance was being maintained by the said plaintiff, and if they further find from the evidence that she acted upon such circumstances that would have warranted any cautious person in believing that the plaintiff was guilty of maintaining the nuisance complained of by the said Nettie Goldstein and others, then the verdict must be for the said defendant, Nettie Goldstein.

*Fifth.*—The court instructs the jury that the burden of proof is upon the plaintiff to show that Nettie Goldstein, one of the defendants in this case, acted maliciously and without probable cause in view of the law, that is to say, if the jury find from the evidence that Nettie Goldstein acted in the manner that would have induced any cautious person to have similarly acted under the circumstances, then their verdict must be for the said defendant.

*Sixth.*—The court instructs the jury that the burden of proof is on the plaintiff to show that the defendants or any of them acted maliciously and without reasonable or probable cause and that if the testimony in this case should be such as to leave the minds of the jury in a state of equipoise as to whether or not the defendant, Nettie Goldstein, acted maliciously and without probable cause, then their verdict must be for the said defendant.

*Seventh.*—The court instructs the jury that probable cause is such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused of being guilty and if the jury find that the police magistrate, before whom the plaintiff was taken, held the plaintiff for the action of the grand jury and the grand jury indicted said plaintiff, then they may consider these facts in determining the question as to whether or not probable cause existed as to the defendants or any of them. (Withdrawn.)

The prayers offered by the defendant Oscar Cecil were as follows:

*First.*—The court instructs the jury that probable cause is such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused of being guilty; and if the jury find that the police magistrate, before whom the plaintiff was taken, held the plaintiff for the action of the grand jury and the grand jury indicted said plaintiff, then they may consider these facts in determining the question as to whether or not probable cause existed as to the defendant, Oscar Cecil. (Withdrawn.)

*Second.*—The defendant, Oscar Cecil, prays the court to instruct the jury that if they find from the evidence that the defendant, Oscar Cecil, was only summoned to appear as a witness in the case against the plaintiff, but that he did not swear out the warrant of arrest for her, nor participated in any manner therein "or in the prosecution," then their verdict must be for the defendant, Oscar Cecil.

*Third.*—The defendant, Oscar Cecil, prays the Court to instruct the jury that the burden of proof is upon the plaintiff to establish by a preponderance of evidence that the defendant, Oscar Cecil, *swore out the warrant of arrest for the plaintiff;* and unless they so find, then their verdict must be for the defendant, Oscar Cecil.

*Fourth.*—The jury are instructed that this suit is brought on a theory that the arrest of the plaintiff was caused by the defendant wrongfully in view of the law; that it does not present for decision merely the question whether or not the plaintiff violated the ordinance, and the acquittal of the plaintiff does not decide the question here; for even though a person arrested may be acquitted of the charge on which the arrest is made, the arrest may still be found to have been lawful and proper, and without making persons who promote the arrest liable in a suit for damages such as this; that liability is incurred only in cases in which the arrest or

subsequent proceedings are promoted upon a false charge, out of malice and without probable cause for promoting it.

*Prayer of the Defendant, Oscar Cecil.*—The defendant Oscar Cecil, prays the court to instruct the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover; and their verdict must therefore be for the defendant, Oscar Cecil.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Charles Jackson,* with whom was *Arthur R. Padgett* on the brief, for the appellants.

*Jere J. Santry,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

Appellants are two of five defendants who were sued for malicious prosecution by the appellee, one of the other defendants having been returned *non est,* and the verdict having been in favor of the other two under instructions of the trial court.

The *narr.* alleges that the defendants and each of them did, on or about February 24th, 1921, charge upon oath before Magistrate Chapman, one of the police justices of Baltimore City, that the plaintiff owned and maintained a dog in violation of Ordinance No. 138, by allowing said dog to disturb a certain neighborhood; that as a result of such charge a warrant was served on the plaintiff at her home, by a police officer who took her into custody, placed her in an automobile of the Police Department of Baltimore City and transported her over the public highways of said city to the Northwestern Police Station, "where she was docketed as a prisoner, searched, and forthwith placed in a cell for a considerable time," until subsequently released on bail, plaintiff having prayed a jury trial, that the said defendants, and each of them, made the aforesaid charges and accusations against the plaintiff from motives of malice

and that there was no reasonable or probable cause; that the said defendants and each of them falsely and maliciously and without cause procured the plaintiff to be indicted upon the unfounded charge of violating said ordinance "by allowing her dog to disturb a certain neighborhood," on which charge she was duly tried and acquitted, "in consequence whereof the plaintiff has suffered great pain and mental anxiety, has been put to great cost and expense and is otherwise injured and damaged." Defendants filed general issue pleas. A verdict was found against appellant for $150. On motion of appellants a new trial was granted, and on a second trial a verdict was found by a jury against appellants for $250. This appeal is from a judgment on that verdict.

The one bill of exception is to the ruling of the trial court "in granting the plaintiff's second and third prayers, and in rejecting the defendant, Nettie Goldstein's, first, second and third prayers, and in rejecting the defendant, Oscar Cecil's, 'defendant's prayer' and his third and fourth prayer. The reporter is requested to set out plaintiff's granted prayers and all the prayers of the defendants.

We find no error in the ruling on any of the prayers.

Plaintiff's second prayer simply defines "probable cause." Her third is the usual measure of damages prayer.

The defendant Nettie Goldstein's first rejected prayer, and the rejected prayer of Oscar Cecil marked "prayer of the defendant, Oscar Cecil," are demurrers to the evidence. These will be discussed later.

The third prayer of the defendant Goldstein was properly refused because it is argumentative, and so far as it is a demurrer to the evidence, is covered by her first prayer.

Her second prayer is a variance prayer and does not set out in what the variance consists.

Defendant Oscar Cecil's first prayer was withdrawn and his second prayer was granted as amended. His third prayer was properly refused because it sought to have submitted to the jury only the fact as to whether or not the said defendant swore out the warrant of arrest, basing the verdict

on the finding as to that fact, and omitting all reference to
his participation otherwise in the prosecution. As the second
prayer of this defendant, as amended (there appearing on
the record no objection or exception to the amendment), sub-
mitted the omitted fact to the jury, it was a concession that
there was evidence as to that fact.

His fourth prayer was properly refused because it is
argumentive and discussess the law in general without sub-
mitting specific facts to be found by the jury. This leaves
for consideration the demurrer prayers above referred to.

These prayers are based on the contention of appellants
that there was no evidence legally sufficient to show want of
probable cause for the prosecution.

In suits for malicious prosecution, the burden is upon the
plaintiff to prove that the prosecution complained of was
instigated by the defendant without probable cause and that
it terminated in an acquittal, dismissal or abandonment.
Malice is also a necessary element but, when not negatived,
it may be inferred by the jury from the absence of probable
cause, though no express malice be shown.

Where probable cause is shown, no suit will lie for malici-
ous prosecution, whatever the *actual motive* for the prose-
cution may appear to have been.

Probable cause, as defined in a number of cases, is: "Such
reasonable ground of suspicion supported by circumstances
sufficiently strong in themselves as to warrant a cautious man
in believing the party accused to be guilty."

Whether the evidence in any given case is legally suffi-
cient to show want of probable cause is a question of law; or,
as said in *Thelin v. Dorsey,* 59 Md. 545, "what will amount
to the want of probable cause, in any case, is a question of
law for the court." See *Jordan v. The James & Holstrom
Piano Co.,* 140 Md. 207, and cases there cited.

The testimony on behalf of the plaintiff tends to prove
that in February, 1921, she was living with her father,
George G. Rau, and her brother, George D. Rau, Jr., 2130
Walbrook Avenue, and was keeping house for her father;

that her brother owned the dog of whose barking complaint was made; that the license was issued in the name of George G. Rau, 2130 Walbrook Avenue; that the dog had been there for about four years prior to February, 1921, and no complaint was made of him until the early part of that year; that in September, 1920, plaintiff complained to the defendant, Mrs. Nettie Goldstein, that her daughter was entertaining "her fellows" on plaintiff's front steps, "and it made her angry, and then that following week she made the remark she was going to see that I got rid of the 'D' dog"; that Mrs. Goldstein called plaintiff a "skinny old maid" and her father "an old codger"; that after that, some time in January, 1921, "they started a dispute about the dog, and then February they had me arrested on account of the dog"; that the dog was a pet of the family; that it did not bark more than dogs ordinarily do; that plaintiff was arrested and taken to the police station; that both of the defendants were at the police station, but she prayed a jury trial and the case was sent to the Criminal Court of Baltimore City, where she was tried by a jury and acquitted.

Officer John D. Schmidt, testifying for plaintiff, said: "That 6.10 P. M. Julia Rau was charged with violating Article 138, disturbing a certain neighborhood in Baltimore City, State of Maryland, on or about February 23, 1921; under the proper headings the following appeared; name and address, Julia Rau, 2130 Walbrook Avenue; sex, female; age, 29; occupation, house keeper; single; complainant's name, Cora Berryman, 2136 Walbrook Avenue; witnesses' names and addresses, Oscar Cecil, Nettie Goldstein, Carrie Goldman; disposition, jury trial prayed, released on bail for court."

This officer further testified, on cross-examination, that two complaints were made to him, one by Oscar Cecil and one by a Mr. Byers Ridgewood; that Cecil asked him for information as to what he could do with reference to the dog annoying the neighborhood. "I said I would take the matter up at once and see what I could do. I went then to see Miss

Rau and she said she would comply with my request and try to keep the dog quiet"; that this was about ten days before the arrest; that when he told her that Mr. Cecil was complaining about the dog she said, "Well, I don't see where the dog barks so much"; she said, "They are all complaining in the neighborhood"; that Mrs. Goldstein never made any complaint to her with reference to the dog.

R. Bayly Chapman, testifying for plaintiff, said that he was at the time of the arrest a police magistrate at the Northwestern Police Station; that he issued the warrant for the arrest of plaintiff on February 24th, 1921; that the warrant showed that the complainants were Cora Berryman, Oscar Cecil, Nettie Goldstein and Carrie Goldman. On cross-examination the witness said that he could not say from personal recollection that Cecil was there, but would say from the warrant that he was there, and made complaint and asked for a warrant.

The testimony offered on behalf of defendants tends to show that the dog was a nuisance to the neighborhood; that the plaintiff not only did not try to stop the dog from barking, but that she encouraged him to do so; that she said to a number of witnesses, including the defendant, Nettie Goldstein, "My dog don't have to stop barking, he can bark as much as he pleases"; that to one witness who had a baby, and asked plaintiff if she didn't pity the child, she replied, "No, I don't stop my dog for any darn Jew"; that to Joseph Goldstein, husband of one of the defendants, plaintiff said, "My dogs"—it appears there were two for awhile— "don't have to stop barking for you or anybody else, they have licenses and they can bark all they want"; that on one occasion when this witness "hollered" at the dogs, plaintiff's father said, "I wish you would leave them dogs alone, these dogs have license to bark and will bark all they want." Neither the plaintiff nor her father deny that they made the remarks attributed to them.

The testimony is conflicting as to what part the defendants took in the prosecution.

.It is urged by appellee that she discharged her burden of proving want of probable cause when she proved that the offending dog did not belong to her, and that this fact would have been disclosed to appellants if they had taken ordinary precaution to look up the license records. On the other hand appellants contend that they were justified in relying upon the representations of ownership made by plaintiff herself in referring to the dog as "my dog."

But that is such a common expression when used in reference to a household pet by any member of a family (especially the one who feeds and takes care of it) in speaking to a stranger, that it should not have been taken as conclusive without further inquiry, by one about to take such a serious step as instigating a criminal prosecution.

"Even if there were circumstances of suspicion in the mind of the defendant which might have been readily removed or explained by reasonable or proper inquiry, and there was no inquiry made, such circumstances cannot be made the ground for showing the existence of probable cause." *Johns v. Marsh,* 52 Md. 336.

This case was twice tried, and in each instance was permitted by the trial judge to go to the jury.

As presented by the present record, the question is not entirely free from doubt. We therefore feel constrained to affirm the ruling of the trial court refusing to withdraw the case from the jury.

*Judgment affirmed, with costs to appellee.*