## WESKO *v.* G.E.M., INC. ET AL.

[No. 296, September Term, 1973.]

*Decided July 8, 1974.*

*Motion for rehearing filed July 31, 1974; denied July 31, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*R. Leo Kent,* with whom were *C. Peter BeLer, Charles Edward Mentzer* and *Alfred J. O'Ferrall, III* on the brief, for appellant.

*Robert E. Scott, Jr.,* and *David M. Buffington* for appellees.

SINGLEY, J., delivered the opinion of the Court.

After a jury in the Circuit Court for Baltimore County had returned verdicts for $5,000.00 compensatory damages and $15,000.00 punitive damages in favor of Richard A. Wesko against G.E.M., Inc. and GEM International, Inc. (GEM), the court (Menchine, J.) granted GEM's motion for a judgment n.o.v. Wesko appealed to the Court of Special Appeals which affirmed the lower court's judgment in *Wesko v. G.E.M., Inc.,* 19 Md. App. 161, 310 A. 2d 191 (1973). We granted certiorari.

The circumstances which gave rise to the litigation are set out in greater detail in the opinion of the Court of Special Appeals, and need only be summarized here. Wesko, an employee of Bethlehem Steel Corporation, had for some time

been a customer of GEM, a discount store which sold a wide range of merchandise. In 1968, his account fell in arrears, and GEM obtained a judgment against Wesko and his wife on 11 February 1969 in the People's Court of Baltimore County, a judgment which was later recorded in the county's circuit court. On 24 February 1969, Wesko paid his account in full. In October, 1969, N. Frank Lanocha, the attorney who had represented GEM in the People's Court case, had an attachment issued on the judgment, and laid the attachment in the hands of Bethlehem Steel, Wesko's employer. As a result, a portion of Wesko's next wage payment was withheld for several months.

Wesko entered suit against GEM, claiming damages of $500,000.00. Combined in his declaration were what he characterized as nine causes of action, only two of which survived a demurrer and motions for directed verdicts. These counts, numbered eight and nine, taken together, alleged a wrongful and malicious misuse of judicial process. Mrs. Wesko joined in her husband's suit, adopting the allegations of his declaration and asserting her own claim for damages in a similar amount. At the conclusion of the evidence, the trial court took Mrs. Wesko's case from the jury.

Although Wesko briefed a many-faceted argument in the Court of Special Appeals, his approach before us is a narrow one. He argues that the presence or absence of malice on GEM's part was a jury question, and that the jury quite properly inferred malice from a lack of probable cause for GEM's action. As a consequence, he maintains that the trial court erred when it granted the motion for a judgment n.o.v.

Wesko seeks support for his contention in a line of Maryland cases which can be traced from *Stansbury v. Fogle*, 37 Md. 369 (1873), to *Torsch v. Dell*, 88 Md. 459, 41 A. 903 (1898), through *Goldstein v. Rau*, 147 Md. 6, 127 A. 488 (1925), to *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 122 A. 2d 457 (1956), and *Banks v. Montgomery Ward & Co.*, 212 Md. 31, 128 A. 2d 600 (1957), all of which involved what were alleged to be malicious prosecutions on criminal charges.

Although the tort arising from malicious prosecution on

criminal charges and that arising from malicious use of civil process are similar in some respects, with the consequence that the terminology is sometimes confused,[1] both must be distinguished from actions for abuse of process, where criminal or civil process is used in a manner not contemplated by law, *see Bartlett v. Christhilf,* 69 Md. 219, 229-30, 14 A. 518, 522 (1888); *cf. Zablonsky v. Perkins,* 230 Md. 365, 370, 187 A. 2d 314, 317 (1963), and recovery may generally be had without the necessity of showing lack of probable cause or the termination of the proceeding in favor of the plaintiff, *see Walker v. American Security & Trust Co.,* 237 Md. 80, 87, 205 A. 2d 302, 306 (1964); *but compare Gore v. Condon,* 87 Md. 368, 375, 39 A. 1042, 1044 (1898).

The distinction between the three actions was clearly drawn in *Baldwin v. Davis,* 188 Ga. 587, 588, 4 S.E.2d 458, 461-62 (1939):

> "1.(*a*) 'Strictly speaking, the term "malicious prosecution" is applicable only to the carrying on of a criminal case. . . . When damages are sought for the malicious carrying on of a civil suit, the cause of action is . . . for the malicious use of process. . . . However, the essential elements in a cause of action for the malicious prosecution of a criminal case and the malicious use of process in a civil suit are the same.' [Citations omitted.]

> "(*b*) Malicious use of [civil] process is where a plaintiff in a civil proceeding employs the court's process in order to execute the object which the law

---

1. This confusion would seem to have its origin in the very distant past. In England, an action on the case lay for malicious use of process until the enactment of the Statute of Marlbridge, 52 Hen. III (1267). The rationale of this statute, which awarded costs to a successful tenant by way of amercement in actions brought by an overreaching landlord, would appear to have been later extended to cases where amercement was granted *pro falso clamore,* 3 W. Blackstone, Commentaries *376, at 1338 (Lewis ed. 1922). Thereafter, for there to be a recovery, an arrest (malicious prosecution on criminal charges), a seizure of property (malicious use of civil process), or other special damage (abuse of process) had to be shown. Maryland adopted the English rule in McNamee v. Minke, 49 Md. 122 (1878); *see generally* Supreme Lodge American Protective League v. Unverzagt, 76 Md. 104, 105-06. [Supreme Lodge American Protective League v. Muverzagt (*sic*),] 24 A. 323 (1892).

intends for such a process to subserve, but proceeds maliciously and without probable cause. . . .

"(c) Malicious abuse of [civil] process is where a plaintiff in a civil proceeding wilfully misapplies the process of a court in order to obtain an object which such a process is not intended by law to effect. . . ."

*See also Walker v. American Security & Trust Co., supra,* 237 Md. at 87, 205 A. 2d at 306-07; *see generally* W. Prosser, Law of Torts §§ 119, 120, 121 (4th ed. 1971); Restatement of Torts, § 653 *et seq.*, § 674 *et seq.*, § 682 (1938).

Our cases involving the allegedly malicious use of civil process include *Siegman v. Equitable Trust Co.,* 267 Md. 309, 297 A. 2d 758 (1972); *Delisi v. Garnett,* 257 Md. 4, 261 A. 2d 784 (1970); *Walker v. American Security & Trust Co., supra,* 237 Md. at 88, 205 A. 2d at 307; *Shamberger v. Dessel,* 236 Md. 318, 204 A. 2d 68 (1964); *North Point Constr. Co. v. Sagner,* 185 Md. 200, 44 A. 2d 441 (1945); *Owens v. Graetzel,* 149 Md. 689, 132 A. 265 (1926); *H. P. Rieger & Co. v. Knight,* 128 Md. 189, 97 A. 358 (1916); *Supreme Lodge American Protective League v. Unverzagt,* 76 Md. 104, [*Supreme Lodge American Protective League v. Muverzagt (sic),*] 24 A. 323 (1892); *Clements v. Odorless Excavating Apparatus Co.,* 67 Md. 461, 605, 10 A. 442, 13 A. 632 (1887), and *McNamee v. Minke,* 49 Md. 122 (1878). Through many of these cases runs the common thread first found in *McNamee v. Minke, supra,* 49 Md. at 134:

" 'But it must be observed, that there is a great difference between a false and malicious prosecution by way of indictment, and bringing a civil action; for in the latter, the plaintiff asserts a right, and shall be amerced *pro falso clamore;* also the defendant is entitled to his costs; and therefore, for commencing such an action, though without sufficient grounds, no action on the case lies.' . . . But if the plaintiff declares that he has been falsely and maliciously arrested, or that, by reason of a false claim maliciously asserted by the defendant, he was required to give bail, and upon failure he

was detained in custody, or his property was attached, there the action lies, because of the special damage sustained by the plaintiff. It is not enough, however, for the plaintiff to declare generally that the defendant brought an action against him *ex malitia et sine causa, per quod* he put him to great charge, etc.; but he must allege and show the grievance specially. . . . Otherwise, parties would be constantly involved in litigation, trying over cases that may have failed, upon the mere allegation of false and malicious prosecution."

The cases make it clear that for an action for malicious use of civil process, and such is the issue here, to succeed, several elements must co-exist: (i) the institution of civil proceedings (ii) without probable cause (iii) with malice (iv) that the proceedings have terminated in the plaintiff's favor, and (v) that damages were inflicted on the plaintiff by seizure of his property or other special injury, *Siegman v. Equitable Trust Co., supra,* 267 Md. at 317, 297 A. 2d at 762; *Shamberger v. Dessel, supra,* 236 Md. at 320, 204 A. 2d at 69; *Owens v. Graetzel, supra,* 149 Md. at 695-96, 132 A. at 267; *Supreme Lodge American Protective League v. Unverzagt, supra,* 76 Md. at 108, 24 A. at 324; *McNamee v. Minke, supra,* 49 Md. at 133.

While malice can be inferred from want of probable cause, *Owens v. Graetzel, supra,* 149 Md. at 696, 132 A. at 267, it is no more than a permissible inference, sometimes loosely characterized as prima facie evidence, subject to negation by proof that there was no actual malice on the defendant's part, *Jannenga v. Libernini,* 222 Md. 469, 474, 160 A. 2d 795, 798 (1960); *Banks v. Montgomery Ward & Co., supra,* 212 Md. at 42, 128 A. 2d at 606; *Goldstein v. Rau, supra,* 147 Md. at 13, 127 A. at 491; *Torsch v. Dell, supra,* 88 Md. at 467, 41 A. at 905; *Boyd v. Cross,* 35 Md. 194, 197 (1872).[2] While the

---

2. Although *Jannenga, Banks, Goldstein, Torsch,* and *Boyd* were all malicious prosecution cases, the principle for which they are cited is equally applicable to malicious use of civil process cases, because both causes of action contain essentially identical elements. Walker v. American Security & Trust Co., 237 Md. 80, 87, 205 A. 2d 302, 307 (1964); H. P. Rieger & Co. v. Knight, 128 Md. 189, 200, 97 A. 358, 362 (1916).

inference has been analogized to a presumption in some of the malicious prosecution cases, *see, e.g., Safeway Stores, Inc. v. Barrack, supra,* 210 Md. at 175, 122 A. 2d at 461; and the early cases of *Torsch v. Dell, supra,* 88 Md. at 467, 41 A. at 905, and *Boyd v. Cross, supra,* 35 Md. at 197, which went even further, the general view is that it is not a presumption.[3] By way of contrast, in a case where there is an alleged malicious prosecution (on criminal charges), if there is probable cause, there can be no recovery even though actual malice is proved, *Delisi v. Garnett, supra,* 257 Md. at 8, 261 A. 2d at 786; *Walker v. American Security & Trust Co., supra,* 237 Md. at 89, 205 A. 2d at 308; *Kennedy v. Crouch,* 191 Md. 580, 587, 62 A. 2d 582, 586 (1948); *Medcalfe v. Brooklyn Life Ins. Co.,* 45 Md. 198, 204 (1876).

One of the anomalies of this case is that Wesko called as a witness Mr. Lanocha, the attorney who instituted the People's Court suit for GEM, and caused the attachment to be served on Bethlehem Steel. As part of his case in chief, he also called Robert E. Schwalenberg, GEM's division credit manager, as an adverse witness.

Lanocha testified that the Wesko account had been placed in his hands for collection in July of 1967. He said that shortly thereafter he advised the Weskos of this, and asked that payments be made directly to him. No payments were made to him, but payments were made to a GEM store in Baltimore, which notified Lanocha. Despite this, the account remained delinquent, and Lanocha brought suit in November of 1968 and obtained judgment in February, 1969. As soon as judgment was entered, Lanocha advised the Weskos that he proposed to attach their assets if the judgment was not paid. Hearing nothing from the Weskos, and not being advised by GEM of the receipt of any payments, Lanocha had the attachment issued in October, 1969.

Schwalenberg testified that he had never met, or talked to, Wesko; that he was division credit manager for GEM,

---

**3.** We have found only one contrary holding, in Brand v. Hinchman, 68 Mich. 590, 601, 36 N. W. 664, 669 (1888) (malicious use of civil process), where no authority was cited in support of the proposition.

with offices at Hyattsville, Maryland, where credit records for GEM stores in Baltimore, suburban Washington, and Virginia were kept. When Schwalenberg regarded an account as delinquent, a copy of the ledger account was sent to the credit manager of the appropriate store, whose responsibility it was to determine whether the account should be referred to an attorney for collection. If it was decided to take such action, an appropriate notation was placed on the ledger account at Hyattsville. The fact that this was not done in Wesko's case resulted in Lanocha's not being notified when Wesko paid the account in full in late February, 1969.

Lanocha testified that he received a telephone call from Wesko on the day that Wesko first learned of the attachment. Later, on the same day, he had a telephone conversation with Mrs. Wesko. During her conversation, Lanocha called Hyattsville and learned that payment had been made. He told Mrs. Wesko, and later Mr. Wesko, that he would dismiss the attachment and close out the case. Later on the same day, Lanocha received a call from the Weskos' attorney. He attempted to explain that he would not have issued the attachment had he been advised of payment, and that the whole affair was "very obviously, a goof." Accordingly, he dismissed the attachment, entered an order of satisfaction, and notified Bethlehem Steel.

It should be remembered that Schwalenberg and Lanocha were witnesses called by Wesko. While Schwalenberg was an adverse witness, Lanocha was not. Both testified that the issuance of the writ of attachment was the result of a clerical mistake, and not actuated by any improper motive or purpose. Wesko was bound by the testimony of Lanocha, whom he had called as his witness, *Williams v. Wheeler*, 252 Md. 75, 79, 249 A. 2d 104, 107 (1969); *cf. Mason v. Poulson*, 43 Md. 161, 177 (1875). Schwalenberg was called as an adverse witness by Wesko, as permitted by Maryland Code (1974) § 9-113 of the Courts and Judicial Proceedings Article.[4] His testimony was uncontradicted, with the consequence that

4. Formerly Maryland Code (1957, 1971 Repl. Vol.) Art. 35, § 9.

Wesko had established in his case in chief the fact that neither Lanocha nor Schwalenberg had acted from improper motives, and as a consequence had negated any possibility that malice could be inferred from want of probable cause.

At this stage of the evidence, the existence or absence of malice was no longer a question of fact to be determined by the jury, because when the facts remain unchallenged the existence or absence of malice becomes a question of law to be determined by the court, *Torsch v. Dell, supra,* 88 Md. at 467, 41 A. at 905; *Cecil v. Clarke,* 17 Md. 508, 524 (1861); *cf. Boyd v. Cross, supra,* 35 Md. at 196.

This being the situation, there remained nothing for the jury to consider, and we regard the entry of the judgment n.o.v. under Maryland Rule 563 as entirely proper. On appellate review we consider the evidence and the reasonable inferences to be drawn from it in the light most favorable to the party opposing the motion — here, Wesko, *Gill v. Computer Equip. Corp.,* 266 Md. 170, 173, 292 A. 2d 54, 55 (1972); *Lusby v. First Nat'l Bank,* 263 Md. 492, 499, 283 A. 2d 570, 573 (1971). Here, while probable cause was lacking, any possible inference of malice had been negated by the testimony of Lanocha, whom Wesko could not impeach, and the testimony of Schwalenberg, which he was unable to controvert, and there was no issue of fact for the jury, *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961); *Maszczenski v. Myers,* 212 Md. 346, 129 A. 2d 109 (1957).

> *Judgment affirmed; costs to be paid by appellant.*